In the Interest of J.L.B., A.C.S., M.A.S., P.M.S., W.B.S., Jr., Respondents.

Juvenile Officer, Respondent,

v.

A.B.S. (Mother), Appellant,

J.H., Defendant,

W.S., Sr., Defendant.

No. WD 56631.

Missouri Court of Appeals, Western District.

Nov. 30, 1999.

Rehearing Denied Feb. 1, 2000.

Clinton Collier, Kansas City, for appellant.

Katherin Rodgers, Anastacia Renae Adamson, Dale Godfrey, Kansas City, for respondent.

Before ALBERT A. RIEDERER, Presiding Judge, JAMES M. SMART, Jr., Judge and JOSEPH M. ELLIS, Judge.

RIEDERER, Presiding Judge.

### Factual Background

Appellant, Alonda Bowden Smith, is the natural mother of the following five children: (1) J.L.B., born December 7, 1986; (2) W.B.S. born August 1, 1990; (3) A.C.S., born April 10, 1993; (4) M.A.S., born June 3, 1994; and (5) P.M.S., born March 8, 1996. In late June and early July of 1994, a request for detention was filed for each of the four children born at the time, M.A.S., A.C.S., W.B.S. and J.L.B. Appellant stipulated to the allegations contained in a petition filed by the Juvenile Officer of Jackson County, including allegations that Appellant was "homeless and unable to provide a stable or permanent residence for the children" and that she "habitually uses cocaine." Consequently, the four children were removed from Appellant's care and were placed in the custody of the Missouri Division of Family Services ("DFS"). Two of the removed children, W.B.S. and J.L.B., were never returned to Appellant's custody. However, on February 8, 1995, the other two children, A.C.S. and M.A.S., were returned to Appellant as directed by a judgment of the Family Court. Included in that judgment were the following orders:

[I]ndividual counseling for the child and [Appellant] shall continue for so long as deemed necessary by the therapist.

[Appellant] is to submit to random urinalysis upon demand of worker.

[Appellant] is to participate in Alcoholics Anonymous.

On March 9, 1995, the Juvenile Officer filed a motion to modify the Family Court's February 8, 1995 judgment.

Therein the Officer alleged that Appellant had abandoned both A.C.S. and M.A.S. in the custody of their grandmother without leaving adequate provisions for their care and custody. As a result, on March 13, 1995, A.C.S. and M.A.S. were again placed in the custody of DFS. They had been back with Appellant for 33 days. However, the motion to modify was eventually dismissed, and by order of the Family Court's July 6, 1995 judgment, A.C.S. and M.A.S. were again returned to the custody of their mother, Appellant. That judgment further ordered that Family Preservation Services ("FPS") were to be implemented. On August 28, 1995, a first amended motion to modify was filed with respect to A.C.S. and M.A.S. Therein it was alleged that:

> the father presented [M.A.S.] at Research Medical Center Emergency Room for treatment for second degree burns on the right and left legs of undetermined age which occurred while the child was in the care of [Appellant] and for which the mother failed to seek appropriate medical attention. The mother reports the child climbed over an electric iron that was placed on the floor.

Soon thereafter, A.C.S. and M.A.S. were once again removed from Appellant's care and were never returned to her. Then, on November 16, 1995, after a hearing that included testimony by Appellant, the Family Court issued four judgments sustaining the first amended motions to modify, committing M.A.S. and A.C.S. to the custody of DFS and committing W.B.S. and J.L.B. to the custody of couple Ida and David Hughes under the supervision of DFS. The court also ordered Appellant and husband William Smith, Sr., to "participate in substance abuse treatment." With respect to all four children, the judgment expressed that the court found that "reasonable efforts have been exercised to reunify the family and that return of the child to the family home is contrary to the welfare of the child."

On May 1, 1997, the Juvenile Officer filed a first amended petition seeking to remove then thirteen-month-old P.M.S. from Appellant's custody. Contained in that petition were the following allegations:

> The child is without proper care, custody, and support in that on or about April 10, 1997, police officers responded to [Appellant's] residence on the report of a disturbance and discovered the home to be filthy and littered with clothes, broken glass and feces. There was rotting food throughout the kitchen and very little food for the infant. The police observed several pipes used to smoke crack cocaine on a coffee table and television, as well as razor blades and empty plastic bags used to hold crack cocaine on the floor of a bedroom where the infant had access to crawl. The [Appellant] admitted that she smoked crack cocaine to the police.

After hearing evidence, the Family Court sustained the petition on August 25, 1997, and P.M.S. was committed to the custody of DFS for placement in foster care. The court again ordered Appellant to submit to random urinalysis and also to successfully complete inpatient substance abuse treatment.

Finally, on January 7, 1998, the Juvenile Officer of Jackson County filed a petition for termination of parental rights with regard to P.M.S., and on April 16, 1998, the Officer filed first amended petitions for termination of parental rights with regard to J.L.B., W.B.S, A.C.S. and M.A.S. Contained in each of the amended petitions were the following allegations:

7. The child has been abused or neglected.

8. [J.L.B./W.B.S./A.C.S./M.A.S.] has been under the jurisdiction of the Family Court for more than one year. The conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parents in

the near future. Further, the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. Specifically, the parents have failed to successfully participate in drug treatment, therapy, and have generally failed to progress towards reunification with the child.

On July 1 and August 14, 1998, a hearing was conducted before the Circuit Court of Jackson County, Family Court Division, regarding the petitions for termination of parental rights. Subsequently, on October 30, 1998, the Honorable Jay A. Daugherty issued judgments terminating Appellant's parental rights to and over each of her five children. Therein, the court stated that pursuant to Section 211.447.2(2), it found by clear, cogent and convincing evidence that the children had been abused or neglected. With respect to subsections (a) through (d) of Section 211.447.2(2), the following findings of the court were recited in the judgments:

(a) No evidence was adduced to support a finding of parental mental condition.

(b) Appellant is chemically dependent such that she cannot consistently provide the necessary care, custody and control of the child and cannot be treated so as to enable her to do so. She repeatedly participated in drug treatment programs, but has continued to relapse and require further treatment.

(c) No evidence was adduced to support a finding of recurrent acts of abuse.

(d) No evidence was adduced to support a finding of lack of parental support.

With respect to subsections (a) through (d) of Section 211.447.2(3), the court made these findings:

(a) The parents made little or no progress in complying with the terms of the social service plans entered into by them and DFS.

(b) DFS's efforts to aid Appellant in adjusting her circumstances or conduct

to provide a proper home for the child have failed;

(c) No evidence was adduced to support a finding of parental mental condition.

(d) Appellant is chemically dependent such that she cannot consistently provide the necessary care, custody and control of the child and cannot be treated so as to enable her to do so. She repeatedly participated in drug treatment programs, but has continued to relapse and require further treatment.

This appeal ensued.

## Standard of Review

In reviewing a termination of parental rights, we sustain the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re S.L.B., S.N.B. and R.J.B.,* 964 S.W.2d 504, 506 (Mo.App.1998). We defer to the trial court's determination regarding the credibility of the witnesses and examine all the facts in the light most favorable to the trial court's order. *Id.* The best interests of the children are always the court's utmost concern in a parental rights termination case. *Id.*

## Discussion

Appellant claims the trial court erred in terminating her parental rights in that the evidence presented at trial was insufficient to meet the Juvenile Officer's burden of proof necessary to establish the necessary statutory factors set forth in Section 211.447.2(2). Under that section, a court may terminate parental rights upon finding (1) that there exists one or more of the statutory grounds for termination, and (2) that termination would be in the best interests of the child. *In the Interest of T.G.,* 965 S.W.2d 326, 332 (Mo.App.1998). The evidentiary standard for proving the existence of the statutory grounds for termination is "clear, cogent, and convincing evidence." *Id.* At the time of the trial

court's proceeding, Section 211.447.2 provided in pertinent part:

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

\* \* \* \* \* \* \* \*

(2) The child has been abused or neglected.  In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

\* \* \* \* \* \* \* \*

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

\* \* \* \* \* \* \* \*

(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.  In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;

(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;

\* \* \* \* \* \* \* \*

■ (d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control;

In her brief, Appellant contends that "the evidence of her chemical dependence was insufficient to meet the clear, cogent and convincing standard required by the statute and case law."  She further argues that, contrary to the finding of the trial court, the Juvenile Officer did not show by clear, cogent and convincing evidence that Appellant made little or no progress in complying with the terms of the social service plan set for her by DFS. Thus, she claims, the Officer did not meet his burden of proof for establishing the statutory conditions under Section 211.447.2(3).  Since we affirm the termination of parental rights under Section 211.447.2(2), we need not reach this latter issue.  Proof of only one statutory ground is sufficient for termination.  *In the Interest of R.K.,* 982 S.W.2d 803, 806 (Mo.App.1998).

■ With specific regard to the issue of chemical dependence, Appellant cites the trial testimony of Dr. Gregory Sisk. Dr. Sisk is a clinical psychologist who conducted a psychological evaluation of Appellant and her husband at the request of DFS. Dr. Sisk testified that he evaluated Appellant and then diagnosed her as having a cocaine dependence in remission, neglect

of children and mixed personality disorder. Appellant points out, however, that after Dr. Sisk's February 26, 1997 evaluation, he never treated her again to determine whether she had made any progress in overcoming her dependence. She further argues that, other than a relapse in April of 1997, the Juvenile Officer presented no evidence to indicate that since that time, Appellant's chemical dependency had not or could not be treated so as to enable her to consistently provide the necessary care, custody and control of her children.

Appellant also notes the testimony of Erin Ellerman and Flora Boldridge. Ellerman, as she so testified, was the DFS caseworker assigned to Appellant's case from May of 1996 to September of 1997. At trial, Ellerman stated that "[Appellant] successfully completed outpatient [drug] treatment at North Star in 1996." Boldridge was a family therapist that also worked with Appellant. Appellant notes that Boldridge testified that after Appellant's drug relapse, she never saw Appellant exhibit any sign that she was under the influence of drugs or alcohol. We disagree with Appellant's characterization of what the record establishes.

Appellant fails to acknowledge that after testifying that she had completed drug outpatient treatment, Erin Ellerman further testified that "when [Appellant] went in for inpatient treatment, she did not [complete it]." Ellerman additionally stated, "For a time, she made pretty good progress. And, in fact at one time we had the goal changed back to reunification, and, you know, not very long after that the goal went back to termination due to missing visits, relapsing [into drugs] and not participation in services." When asked by the attorney for the juvenile officer whether Appellant and her husband completed the tasks requested of them per their written service agreements with DFS, Ellerman answered, "No." Consistent with this portion of Ellerman's testimony was that of Flora Boldridge. When asked, "What kind of progress did [Appellant and her

husband] make through therapy," Boldridge answered, "I think they were doing quite well during the September through ... March into the early part of April." Boldridge subsequently added, however, "There was some change in March of '97 ... [Appellant] called me ... and stated that ... she ... had relapsed and that the police were called to the home and that they had advised her to enter ... drug treatment." Boldridge said that at that point, she recommended that P.M.S. be removed from the home. Further supporting the termination is the testimony of child-care worker Burke Lenz. Lenz testified that he took over the case after Ellerman in October or November of 1997. When asked, "What were the parents' situations regarding substance abuse," Lenz responded, "My understanding is that they were still using at that time."

The trial court found that termination was in the best interests of Appellant's children, and it further found that each of the children had been abused or neglected. While the terms "abuse" and "neglect" are not defined in Section 211.447, they are defined in Section 210.110. Therein, "abuse" is defined as:

> any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for the child's care, custody, and control, except that discipline including spanking, administered in a reasonable manner, shall not be construed to be abuse.

"Neglect" is defined as "failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being." Section 210.110; *In the Interest of T.G.*, 965 S.W.2d at 334. We agree with the trial court in that the record is replete with evidence that each of the children was, at one time or another, neglected. The record shows that in 1994, Appellant stipulated to the allegations con-

tained in a petition filed against her by the Juvenile Officer. Namely, that she was "homeless and unable to provide a stable or permanent residence" for M.A.S., A.C.S., W.B.S. and J.L.B. and that she "habitually uses cocaine." The record shows that in 1995, the Family Court sustained a motion that included an allegation that Appellant had failed to seek medical attention for second-degree burns on M.A.S.' s legs—a certain instance of failure to provide necessary care. The record shows that in 1997, the Family Court sustained a petition that included an allegation that the police discovered Appellant's home in a condition of filth with crack cocaine paraphernalia laying about and with "very little food" for the only child in her custody at the time, P.M.S. This incident occurred after the court had removed the four other children, where Appellant's motivation to change would have been at its zenith. The record shows that, at that time, the Family Court issued a judgment ordering Appellant to complete inpatient substance abuse treatment, but that Appellant failed to complete that treatment.

Viewing the evidence in the light most favorable to the trial court's determination, we find that the foregoing evidence alone constitutes clear, cogent and convincing evidence of abuse or neglect under Section 211.447.2(2). It instantly tilts the scales against Appellant. We further find that such evidence was appropriately considered pursuant to 211.447.2(2)(b) as evidence of chemical dependency that prevented Appellant ·from consistently providing the necessary care, custody and control of her children such that termination of Appellant's parental rights was justified. The record shows Appellant continually used illegal drugs and failed to successfully complete substance abuse treatment, and, therefore, the court was justified in concluding that she suffered from a chemical dependency which prevented her from providing necessary care, custody and control of her children. *In Interest of S.C. and L.C.*, 914 S.W.2d 408, 412 (Mo.App.1996).

Finally, we also affirm the trial court's judgment that termination of Appellant's parental rights is in the best interests of all five children. Although the October 30, 1998 judgments did not elaborate as to specifically why the court found termination in the children's best interests, the record contains a plethora of evidence to support such a finding. The record reveals that Appellant had a history of drug addition and relapse, as evidenced by the aforementioned testimony of Dr. Gregory Sisk, Erin Ellerman and Flora Boldridge. The record further reveals that Appellant had a history of neglecting her children. In 1995, she alleged that M.A.S. burned himself on an iron that was placed on the floor. However, she failed to seek appropriate medical attention for the child's second degree burns. In 1997, the police discovered Appellant's home in a filthy condition with little food available for the only child in Appellant's custody at the time, P.M.S. In addition, there is evidence that there was little or no bonding between Appellant and at least one of her children, as evidenced by the testimony of DFS worker Megan Birch. Birch testified about the supervised visits that Appellant had with P.M.S. after P.M.S. was removed from Appellant's custody. She testified that there appeared to be a lack of bonding between Appellant and the child. Birch stated, "[P.M.S.] tends to cling to me, and when I redirect him and try to tell him to go over to Ms. Bowden, . . . he is a little reluctant." Finally, with respect to all the children, the record shows that there have been significant periods of time in their young lives in which they were separated from Appellant. W.B.S. and J.L.B. were removed from her custody in 1994 and never returned. A.C.S. and M.A.S. were twice removed from Appellant's custody temporarily before being permanently removed from her custody in 1995. P.M.S. was removed from Appellant's custody when the child was only seventeen months old.

We are required to view this evidence in the light most favorable to the court's judgment. And we give deference to the court's ability and opportunity to judge the credibility of the witnesses, one of whom was Appellant. The court specifically found Appellant's evidence less credible than that of the Respondent. Under these circumstances, the record leaves no question that termination of parental rights is in the best interests of all five of the children.

The judgments of the trial court are affirmed.

SMART and ELLIS, JJ., concur.