38 S.W.3d 495 (2001)
In the Interest of J.K. & R.T.H., Respondents.
Juvenile Officer, Respondent,
v.
T.K. (Mother), Appellant,
E.K. (Putative Father), Defendant,
R.H. (Putative Father), Appellant.
Nos. WD 58091, WD 58092 and WD 58490.
Missouri Court of Appeals, Western District.
March 6, 2001.
*497 Robert Harold Houske and David H. Cook, Independence, for appellant.
Mary Kathryn O'Malley, Kansas City, John L. Spencer, and Katherine Jean Rodgers, Kansas City, for respondent.
Amy Rush, Kansas City, for Defendant.
Before Presiding Judge LAURA DENVIR STITH, Judge SMART, and Judge HOWARD.
LAURA DENVIR STITH, Presiding Judge.
T.K. (Mother) appeals the termination of her parental rights to her daughter, J.K. (Daughter), and her son, R.T.H. (Son), arguing that the evidence did not support termination under Section 211.447.4(2) or Section 211.447.4(3) and that termination was not in either Son's or Daughter's best interest. Son's putative father, R.H. (Father), also appeals the termination of his parental rights to Son, arguing that the termination was not supported by substantial evidence under the same statutes. Because we find that substantial evidence supported the court's determination that the conditions for termination were met and that termination was in Daughter's and Son's best interests, we affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
Considered in the light most favorable to the judgment, the record demonstrates:
Daughter was born on December 28, 1986, to E.K.[1] and to Mother. Son was born November 19, 1995, to Mother and Father. S.M. (Sister) was born October 25, 1982, and is the daughter of J.M. and of Mother.[2] On June 3, 1997, the Juvenile Officer of Jackson County filed a petition in the family court alleging that Sister, Daughter, and Son were in need of care. At that time, all three children were found to be within the jurisdiction of the family court and were placed in the custody of the Division of Family Services (DFS). On October 22, 1997, the juvenile officer filed an amended petition alleging that the children were without proper care, custody and support in that:

*498 [Mother] and [Father]the mother's paramour and father of [R.T.H.]have a history of domestic violence in the home, which violence (sic.) has placed the children at risk of emotional and physical harm, including in and around August of 1996, when [Father] chased S.M. [sister] out of the home, threatening her with a metal pipe.
At a hearing held on October 28, 1997, both Mother and Father stipulated to these allegations. The juvenile officer presented evidence that Mother and Father had a history of domestic violence between them, which occurred in the home while the children were present. Daughter testified that Father was an alcoholic, that he hit her mother, that he "did drugs," and that Mother and Father had "fights six days out of each week." She also stated that she saw Mother hit Father, but that Father always hit Mother first. Daughter said that she was afraid every day that they would fight. Daughter also testified that she saw Father chase Sister and Mother around the house with a metal pipe.
The juvenile officer presented testimony of therapeutic counselors as to the psychological harm the children suffered by witnessing such domestic abuse. Because of the harm to the children, and in an effort to ultimately reunify the family, DFS recommended that Mother and Father no longer live together. Following the hearing, the court ordered that Mother and Father have supervised visits with the children, that they submit to random urinalysis, and that they participate in individual and family counseling.
In April 1998, the court entered an amended judgment holding that Mother's visits with the children be permitted only if such visits were "consistent with therapeutic recommendation" and that Father's visits should be supervised and should also be allowed only if visits were "consistent with therapeutic recommendation." The court also ordered Mother to participate in individual counseling.
In late 1998, the court once again held a hearing on the matter, and on November 12, 1998, it entered an order providing that Father have no contact with Son until a resumption of visits was recommended by Father's therapist. The court found that Father's contact should be terminated with Son "in part based upon continued evidence of domestic violence" between Father and Mother. Additionally, it found that Mother's "continuing instability in employment and housing make reunification in a timely fashion difficult and improbable." The court further ordered that permanency planning for the children not be delayed.
DFS filed petitions for termination of Mother's and Father's parental rights as to Daughter and Son on February 16, 1999. On September 10, 1999, the court held a hearing on the petitions. Father testified that from the time of the original petition, he had attended six out of eight anger control classes in early 1997 and that he had attended eight to ten Al Anon meetings. Father also testified that Mother moved back in with him just a month before the hearing. He stated that during that month, he and Mother had not had any altercations.
The DFS caseworker testified in the matter as well. She stated that Mother had failed to complete a treatment program at Hope House, a women's shelter; that Mother had left the program after a month because she returned late from curfew and had been drinking in violation of Hope House rules; and that Mother had failed to obtain stable housing, but had been living in a hotel and with a friend. The caseworker and a licensed counselor also testified that Mother tested positive for methamphetamine in March of 1999.
The DFS caseworker further stated that Father and Mother had not progressed, and their situation was nearly the same as it was when the children entered foster care. The juvenile officer presented additional evidence that termination was in the *499 children's best interest because of the parents' history of abuse, because of the length of time the children had been in foster care, and because the parents had not progressed to the point where the children could reunite with them.
On September 30, 1999, the court entered its judgment terminating Mother's and Father's parental rights under Section 211.447.4(2)[3] and Section 211.447.4(3). Mother and Father appeal.
II. BURDEN OF PROOF AND STANDARD OF REVIEW
We will affirm the trial court's decision to terminate parental rights unless "the record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law." Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); In Interest of A.H., 9 S.W.3d 56, 59 (Mo.App. W.D.2000). We will reverse "the order to terminate only if we are left with the firm belief that the order was wrong." In Interest of T.G., 965 S.W.2d 326, 332 (Mo.App. W.D.1998). We review the trial court's findings of fact and all reasonable inferences therefrom in the light most favorable to the trial court's judgment. In Interest of J.W., 11 S.W.3d 699, 703 (Mo.App. W.D.1999). The best interests of the children are "always the court's utmost concern in a parental rights termination case." In Interest of J.L.B., 9 S.W.3d 30, 33 (Mo.App. W.D.1999).
Here, the trial court found that there was clear, cogent and convincing evidence to support termination of Father's and Mother's parental rights under Section 211.447.4(2) and (3). Clear, cogent and convincing evidence "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." In Interest of R.K., 982 S.W.2d 803, 806 (Mo.App. W.D.1998). If either ground for termination relied on by the trial court was supported by such evidence, we may affirm without reaching the merits of the other ground. In Interest of S.C., 914 S.W.2d 408, 413 (Mo.App. W.D.1996). For the reasons set out below, we find that the evidence supported the lower court's decision to terminate Mother's and Father's parental rights under Section 211.447.4(3), and that termination was in the children's best interests, and we affirm the judgment below on that basis without reaching the other issues raised.
III. THE EVIDENCE SUPPORTED TERMINATION OF MOTHER'S RIGHTS UNDER SECTION 211.447.4(3)
Mother argues on appeal that the trial court erred in terminating her parental rights as to Daughter and Son under Section 211.447.4(3), which states in relevant part:
The juvenile officer or [DFS] may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:
....
The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:

*500 (a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control ...
Sec. 211.447.4(3) (emphasis added).
Mother argues that the judgment that her rights could be terminated under this section was erroneous because the court did not consider Mother's "status as a battered woman and, as a battered woman, [she] did not and could not willfully or intentionally neglect her children as suggested by the court," and also because termination is not in the best interests of her children. Mother's argument that she is a battered woman goes hand in hand with our examination of the best interests of the children, and, as such, we examine the arguments concurrently.
In support of her argument, Mother claims that as a battered woman, she has experienced a condition called "learned helplessness," a condition that occurs "when one learns through experience that one cannot escape a negative event, she ceases trying to escape even when the opportunity to do so is present." State v. Williams, 787 S.W.2d 308, 312 (Mo.App.E.D.1990), quoting, Lenore Walker, The Battered Woman 47 (1979). As such, she argues that she did not willfully or intentionally neglect or abandon her children, but rather, she contends, her condition prevented her from meeting the social service plans and other DFS mandates placed upon her.
Even if we were to assume for purposes of appeal that Mother is a battered woman and suffers from a recognized mental condition called Battered Women's Syndrome, she is wrong in arguing that this would preclude termination, because it would preclude a finding that she intended to permit the children to be neglected. Most basically, intent and neglect are mutually exclusive, in that intent refers to a willful act, while "[n]eglect has been described in the context of a termination of parental rights proceeding as `a general and a negative proposition meaning simply the failure to perform the duty with which a parent is charged by the law and by conscience.'" In re S.L.N., 8 S.W.3d 916, 928 n. 5 (Mo.App. S.D.2000), quoting, In Interest of S.K.L., 480 S.W.2d 119, 124 (Mo.App.1972) (emphasis added). As one does not intend neglect, the fact that Mother may not have intended to neglect her children cannot preclude a finding that she did neglect them and did allow conditions to develop through neglect that could lead to abuse. No doubt for this reason, the issues in a termination proceeding under Section 211.447.4(3) for continuation of conditions of neglect do not primarily involve the parent's intent, but rather whether the conditions that led to the assumption of jurisdiction still exist or whether conditions of a potentially harmful nature continue to exist. In other words, it is the continued existence of an unremedied, neglectful situation that is the ultimate issue.
This is not to say that Mother's mental condition is irrelevant to her fitness as a parent. As quoted above, Section 211.447.4(3) specifically provides for the *501 court to make findings as to whether a parent has a mental condition which precludes her from properly caring for her child, as follows:
In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
....
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control.
As is evident from a reading of this provision, even had the court found under Section 211.447.4(3) that Mother did have a mental condition called Battered Women's Syndrome and that it constituted a mental impairment that prevented her from protecting her children or herself from Father or from actively seeing to their proper care, it would not have provided a basis to deny termination. The statute clearly makes such a condition a factor supporting termination. This is logical, for, while the existence of a mental condition does not itself provide a basis to terminate parental rights, if a mentally impaired parent cannot provide a child with needed care, custody and support, whether mental, emotional or physical, it would not make sense for the statute to require the court to nonetheless allow the child to remain with that parent simply because the parent's inability to provide for or protect the child was beyond that parent's control. If the parent has a mental condition that prevents the parent from fulfilling his or her parental obligations, and as a result a child has been and continues to be in a state of neglect, and the other requirements for termination are met, then the court may find that the best interests of the child require termination. In Interest of D.L.M., 31 S.W.3d 64, 70 (Mo.App. E.D.2000). See also In Interest of C.P.B., 641 S.W.2d 456, 460 (Mo.App. E.D.1982); In Interest of A.D.G., 23 S.W.3d 717, 720 (Mo.App. W.D.2000).
We also reject Mother's argument for another reason. As is evident, it is based on the presumption that she is a battered woman, and thus has a "mental condition" that renders her unable to provide care to her children. Mother did not, however, present expert evidence that she had such a condition, and the court below certainly was not required to believe her evidence that she suffered from this condition. In fact, it found that she did not suffer from any mental condition and therefore necessarily rejected the claim that she suffered from Battered Women's Syndrome. Its order stated:
The conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions will be remedied at an early date so that the [children] can be returned to the parents in the near future. Further, the continuation of the parent-child relationship greatly diminishes [the children's] prospects for early integration into a stable and permanent home. Specifically, [Mother] continues to have unstable housing and employment making reunification with the [children] within an ascertainable time period unlikely. [Mother] has subsequently been involved in relationships involving domestic violence in which the [children were] subjected to in the home. [Mother] has failed to complete or make progress in individual therapy. [DFS] has made arrangements for her to see six different individual therapist[s] in the last year due to her unwillingness to cooperate ... As to subsections (a) through (d) of 211.447.4(3), the court makes the following findings: (a) [Mother] has made little or no progress in complying with the terms of the social service plans entered into by her and [DFS]; (b) the efforts of [DFS] to aid [Mother] in adjusting her circumstances or conduct to provide a proper home for the child have failed; (c) no evidence was adduced to support a finding of parental mental condition;

*502 (d) no evidence was adduced to support a finding of parental chemical addiction.
(emphasis added). While Mother argues that the finding that Mother did not adduce evidence that she suffered from a mental condition was not supported by the evidence, the lack of expert testimony or medical evidence supporting her claim to Battered Women's Syndrome fully supports the trial court's ruling. The evidence also supports the court's ruling that the conditions that led the court to assume jurisdiction still exist and are harmful and unlikely to be remedied in the near future.
Mother argues that even if this evidence were sufficient to support termination under Section 211.447.4(3), in its discretion the court should have determined that, on the facts of this case, termination was not in the children's best interests. Counsel notes that the court has the option of denying termination and instead appointing a guardian for the children in a case such as this and argues that the court abused its discretion in not doing so here. However, in the absence of any evidence that the conditions that led to termination would change, and in light of the fact that this means the children would have to continually live in foster care, and that no relatives of Mother were apparently available as caregivers, we cannot find fault with the court's ruling. While it is clear that Mother wanted a continuing relationship with her children, and especially with Daughter, the court could well find that it was not in the children's best interests to live indefinitely in foster care. It could have found, and did find, that it was in the children's best interests to get into a permanent living situation and to have a chance at adoption by someone who could provide them with the care they needed. We affirm termination of Mother's parental rights.
IV. TERMINATION OF FATHER'S PARENTAL RIGHTS IS SUPPORTED BY SECTION 211.447.4(3)
Father argues on appeal that termination of his parental rights as to Son was not supported by substantial evidence in that there was no evidence before the trial court that Father failed to provide for Son's needs. He further argues that the evidence shows that the best interests of Son require that he maintain a relationship with Father. Father argues that he has made substantial progress since Son first came within the jurisdiction of the court. In support, he notes that he completed a substantial portion of anger-control classes and that there is no evidence in the record that demonstrates that Son was actually adversely affected by any household disputes, because he was too young and "didn't know what was going on."
In its judgment, the trial court found that Father "has an anger control problem, [and] although he has participated in individual therapy, he has not progressed to the point where the child can be placed with him in the near future." Additionally, pursuant to Section 211.447.4(3) subsections (a) through (d), the court found that Father made "little or no progress in complying with the terms of the social service plans entered into by them and [DFS]" and that the efforts of DFS to aid Father in adjusting his "circumstances or conduct to provide a proper home for [Son] have failed." In its findings under Section 211.447.6, the court found that Son had few emotional ties to his parents, that the parents have not maintained regular visitation or contact with Son, that the parents have not provided financial or other support for the child, and that no "additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parents within an ascertainable period of time."
In further support of the trial court's judgment, we note that the record indicates a repeated history of domestic violence that occurred not only between Father and Mother but also between Father and Sister. Daughter testified that not only had she seen the abuse between *503 Mother and Father, but that she also saw Father chase Sister around the house with a metal pipe. As late as November 1998, the court terminated Father's contact with Son because it found "continued evidence of domestic violence" between Father and Mother.
Missouri law "clearly allows for the termination of parental rights where a sibling has been abused." In Interest of C.M.W., 813 S.W.2d 331, 334 (Mo.App. W.D.1991). The past abuse "of another sibling is evidence of a home environment that is currently dangerous to the child for whom termination is sought." In Interest of D.G.N., 691 S.W.2d 909, 911-912 (Mo. banc 1985). See also In Interest of J.A.J., 652 S.W.2d 745, 749 (Mo.App. E.D.1983), (holding that although there was no evidence of any "direct physical or emotional harm to [the child] to require this child to suffer the fate of his siblings prior to termination of parental rights would be a tragic misapplication of the law"). Based on the continued evidence of Father's propensity for domestic violence toward Mother and Sister, his lack of progress in anger control, his failure to comply with social service plans, and the other factors under Section 211.447.6 supporting termination, we find that clear, cogent and convincing evidence supported the court's determination that the conditions that led the court to take jurisdiction of Son still existed and were unlikely to be remedied in the near future and that termination was in Son's best interest.
For all of these reasons, we affirm termination of Mother's and Father's parental rights.
SMART, J., and HOWARD, J., concur.
NOTES
[1] E.K.'s parental rights were also terminated in this action as to Daughter; E.K., however, does not appeal the termination.
[2] Neither Mother's nor J.M.'s parental rights as to S.M. are at issue here, but S.M.'s relationship to Mother and Father is relevant to the current cause for factual purposes, as she is the half-sibling of both Daughter and Son.
[3] All statutory references are to RSMo 1994, unless otherwise indicated.