**In the Interest of J.V.O., a Minor.**

**New Madrid County Juvenile Office, Petitioner–Respondent,**

v.

**T.L.O., Respondent–Appellant.**

**No. 25802.**

Missouri Court of Appeals,
Southern District,
Division One.

May 14, 2004.

Shawn D. Young, Portageville, for appellant.

Lynn N. Bock, New Madrid, or respondent.

PHILLIP R. GARRISON, Judge.

This appeal presents for our review the trial court's termination of the parental rights of T.L.O. ("Mother") as to her six-year-old daughter, J.V.O. ("Child") at the request of the juvenile office for New Ma-

drid County ("Respondent"). Mother contends in a single point that the trial court abused its discretion in determining that the best interests of Child were served by terminating Mother's parental rights because, she argues, the trial court misapplied the relevant factors provided by statute for making such determinations. We need not, however, decide Mother's point directly, for we are compelled, for reasons discussed below, to reverse the portion of the trial court's judgment terminating Mother's parental rights and remand the case for further proceedings in light of the Supreme Court of Missouri's holding in *In the Interest of M.D.R.*, 124 S.W.3d 469 (Mo. banc 2004).

Our resolution of this case allows for a somewhat truncated recital of its lengthy factual background. Suffice it to note the following: Child was born November 23, 1997, the youngest of Mother's four children. Both Mother and Child are HIV positive, apparently as a result of Mother having been infected with the virus by Child's father, Demarkus Williams ("Father").[1] Shortly after birth, Child's "viral load"[2] was determined to be 550,000, which, according to medical testimony, was "pretty high." She was placed on a three-drug regimen and Mother was instructed in detail as to proper administration of those medications. By February 1998, however, Child's viral load had increased to 2,148,000, with a "CD4 count"[3] of 1397. This combination of results indicated to

hospital staff that Child was not getting all of her medication. Doctors also were concerned with Child's height and weight, which consistently were measured at the twenty-fifth percentile for children her age.

In January 1998, the Missouri Department of Family Services ("DFS") investigated an allegation that Mother was abusing one of her other three children. While the charge went unsubstantiated, DFS remained in contact with Mother and her children thereafter and, on April 23, 1998, Mother informed her DFS social worker that she and Child were HIV positive.

In March 1999, Child's viral load was back up to 1,000,000 and she weighed between sixteen and nineteen pounds. On June 1, 1999, the care coordinator for the Missouri Department of Health ("MDH") contacted DFS with questions concerning whether Child was receiving her medications. On June 24, 1999, Child was admitted to Our Little Haven, a pediatric care facility affiliated with St. Louis Children's Hospital. In response to difficulty Child had swallowing a full dose of her medicine, the medical staff changed the regimen of drugs administered to her. By July 26, 1999, Child's viral load was down to 2350 and her CD4 had risen to 2047. According to medical testimony, these dramatic changes necessarily indicated that Mother had, again, not been properly giving Child her medications.

---

1. The underlying petition also sought the termination of Father's parental rights on the ground of abandonment. Father made no appearance in the underlying proceedings and the trial court found clear, cogent, and convincing evidence in support of the petition as to Father and terminated his parental rights. This aspect of the trial court's judgment is not a subject of this appeal and is left undisturbed by our opinion.

2. Medical testimony indicated that the term "viral load" refers to the amount of HIV virus

detectable in a single drop of a patient's blood.

3. "CD4 count" refers to the number of so-called "T-cells" detectable in a blood sample. T-cells are infection-fighting cells produced by the body, and which are attacked by the HIV virus and "forced" to replicate copies of the virus, rather than reproduce themselves. Lower CD4 counts, coupled with elevated viral loads, indicate a spread of HIV infection.

The medical staff continued to monitor Child's viral load and CD4 count after she was returned to Mother's home. On February 28, 2000, her viral load was "out of control" at 360,000 and her CD4 count had dropped to 663. This was considered a life-threatening situation,[4] one that could only be explained if Mother was again failing to administer Child's drug regimen. A hotline call was placed to DFS and the next day Child was placed in foster care with James and Malinda Darter ("the Darters"), where she remains at present. Since Child has been with the Darters, her height and weight have risen to the nintieth to ninety-fifth percentiles. Her viral loads have fluctuated between a low of 925 and a high of 40,000.[5]

The relationship between DFS and Mother was governed, in part, by a social services agreement with which Mother failed, in some respects, to comply. Specifically, she was described as "non-compliant" concerning a requirement that she participate in therapy sessions with a provided counselor, who stopped seeing Mother in August 2000 due to her lack of cooperation. Additionally, the service agreement required Mother to obtain medical treatment for her own HIV infection, which she resisted for some time. DFS records indicated that Mother was extremely ill on May 16, 2001, when she was described as so weak that "she couldn't even get up and walk." It was the concern of some DFS employees at the time that Mother might not "make it." Concerns also were expressed early in Mother's interaction with DFS about the unsanitary condition of Mother's home,

with dirty dishes in the sink, food lying out, and clothes in the floor, although the record indicates that these concerns were allayed when Mother relocated to Sikeston, Missouri in June 2001, her health improved, and she was better able to maintain her house.

On February 14, 2003, Respondent filed a petition to terminate the parental rights of Mother and Father as to Child. As statutory grounds for terminating Mother's parental rights, Respondent alleged that Child had been in foster care for at least fifteen of the twenty-two months immediately preceding the filing of Respondent's petition (Section 211.447.2(1)),[6] that Mother had neglected Child (Section 211.447.4(2)), and that Child had been in the jurisdiction of the trial court for more than one year and the conditions that led to the assumption of said jurisdiction continued to exist and were unlikely to be rectified in the future—a so-called "failure to rectify" claim (Section 211.447.4(3)).

On April 8, 2003, the trial court appointed counsel for Mother and, on July 2, 2003, a hearing was held concerning Respondent's petition. On July 25, 2003, the trial court issued its judgment terminating the parental rights of Father and Mother as to Child, in which it found that grounds existed to terminate Mother's parental rights due to the fact that Child had been in foster care for at least fifteen of the preceding twenty-two months. The judgment was silent concerning the other two statutory bases for termination pled by Respondent in its petition. The trial court also found, based upon its consideration of the

---

4. The impetus for the concern expressed by medical staff was the fact that the HIV virus is adept at developing immunity to drugs administered in a haphazard manner, leaving patients—especially children, for whom fewer drug regimes exist—without alternative courses of action for treating the disease.

5. The trial court heard testimony indicating that while the reported viral load of 40,000 was high, Child's physicians were not overly concerned because her CD4 count, at the time, was 2412.

6. References to statutes are to RSMo (2000) unless otherwise indicated.

relevant statutory factors, that to terminate Mother's parental rights was in the best interest of Child. This appeal follows. Other facts pertinent to our treatment of the case are described below.

In Mother's sole point, she contends the trial court abused its discretion in concluding that the termination of Mother's parental rights was in the best interest of Child. In so holding, the trial court considered the relevant factors for making such a determination under Section 211.447.6. Mother alleges, however, that "some of the trial court's findings with respect to these factors were either conclusory in nature or unsupported by the evidence." For example, according to Mother, the trial court "wholly failed to address the most critical consideration of whether Mother now is fully capable of administering ... Child's medication for her HIV positive condition. The undisputed evidence established that that the prior concern over ... Child spitting out medication is no longer an issue because ... Child is old enough to swallow her medication in pill form." Mother claims that "[b]y improperly dwelling upon ... events from several years ago ... the trial court never addressed the more fundamental question of whether Mother has demonstrated sufficient improvement in her own health and circumstances so that the ultimate goal of reunification is now feasible."

█ The decision of a trial court to terminate parental rights will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In the Interest of J.L.F.*, 99 S.W.3d 15, 17 (Mo.App. S.D.2003). Notwithstanding this general standard of review applicable in court-tried cases, cases involving the termination of parental rights are reviewed more closely than others because of the fundamental liberty interests associated with family and child

rearing. *In the Interest of C.N.G.*, 109 S.W.3d 702, 705 (Mo.App. W.D.2003). "Terminat[ion][of] parental rights is an exercise of an awesome power and should not be done lightly." *Id.* (citations omitted).

█ In considering a petition to terminate parental rights, a trial court employs a bifurcated process delineated in Section 211.447: first, the court must find "clear, cogent and convincing" evidence that a statutory ground for termination exists. Section 211.447.5; *In the Interest of C.L.W.*, 115 S.W.3d 354, 355 (Mo.App. S.D.2003). Clear, cogent and convincing evidence is that which "instantly tilts the scales" in favor of termination, when weighed against the evidence presented by the parent whose rights were terminated. *C.L.W.* at 355–56; *In the Interest of A.R.*, 52 S.W.3d 625, 633 (Mo.App. W.D.2001). Second, the trial court must determine whether termination of parental rights is in the child's best interest notwithstanding that a legal ground for termination has been proven. *In the Interest of A.T.*, 88 S.W.3d 903, 905 (Mo.App. S.D.2002). We review the trial court's findings as to this second step of the analysis under an abuse of discretion standard. *Id.*

The relevant factors for a trial court to consider in making this "best interest" determination are set forth in Section 211.447.6, which provides as follows:

6. When considering whether to terminate the parent-child relationship pursuant to subsection 2 ... of this section, ... the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance

of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

By its own terms, then, the statute requires a specific finding on any appropriate and applicable factor listed above. Consequently, if a factor is appropriate and applicable, in that there was evidence presented that arguably favored the parent, reversal is required if the trial court failed to make a finding on that factor. *In the Interest of N.M.J.*, 24 S.W.3d 771, 783 (Mo.App. W.D.2000). Even if the trial court touches upon a relevant factor in its findings, the judgment may be reversed if the trial court fails fully to address evidence that is favorable to the parent. *In the Interest of T.A.S.*, 32 S.W.3d 804, 811

(Mo.App. W.D.2000) (trial court failed to make finding regarding the extent to which mother maintained visitation with child). Furthermore, the conclusory nature of a finding on one of the enumerated factors may be grounds for reversal, in that the trial court's findings must be sufficiently specific that a reviewing court can be assured that the trial court properly considered the factor in deciding to terminate parental rights. *In the Interest of A.S.O.*, 52 S.W.3d 59, 66 (Mo.App. W.D. 2001).

Mother's contention is that in considering whether Child's best interests would be served if Mother's parental rights were terminated, the trial court made findings that "were either conclusory in nature or unsupported by the evidence." We, however, must reverse the judgment of the trial court for an altogether different reason.[7] Specifically, the trial court's finding that "[b]y clear, cogent and convincing evidence, grounds exist to terminate the parental rights of [Mother] ... in that [Child] has been in foster care for at least [fifteen] of the most recent [twenty-two] months" cannot stand in light of our supreme court's recent holding in *M.D.R.*

That opinion, issued after the filing of the trial court's judgment in the instant case, addressed the claim of a mother whose parental rights had been terminated based upon five statutory grounds, one of which was the "fifteen out of twenty-two months" provision cited by the trial court here. *Id.* at 471. Avoiding the constitu-

---

7. Without deciding the merits of Mother's point, we nevertheless note, given that the case is remanded to the trial court for further proceedings, that the trial court is free to revisit its findings in the context of its "best interest" analysis in light of Mother's claim that they are unduly conclusory in nature and fixated to an excessive degree on facts and events too far removed from the present. *See T.A.S.* at 811 (trial court committed reversible error when it failed to make finding regarding extent to which mother maintained visitation with child); *In the Interest of B.C.K.*, 103 S.W.3d 319, 329–30 (Mo.App. S.D.2003) (substantial evidence did not exist supporting finding that parent was incapable of caring for children at the time of hearing); *A.S.O.* at 66 (findings must be sufficiently specific to assure reviewing court that factor was properly considered); *N.M.J* at 783.

tional due process claim raised by the mother, the supreme court held simply that "[S]ection 211.447.2(1) does not make foster care custody for at least [fifteen] of the previous [twenty-two] months a ground for terminating parental rights." *Id.* Rather, the *M.D.R.* court held that that provision served only as a trigger for the mandatory filing by a juvenile officer of a petition for termination of parental rights, not as an independent ground for severing parental rights. *Id.* at 472. The court specifically overruled previous cases decided by the court of appeals wherein the "fifteen out of twenty-two months" factor in Section 211.447.2(1) had been accepted as a trigger for holding that grounds had been established for terminating parental rights, and remanded the case to the court of appeals for consideration of the mother's other non-constitutional claims. *Id.*

Unlike in *M.D.R.*, where the trial court enumerated five statutory grounds for finding that terminating the mother's parental rights was justified, here the trial court seized upon only the "fifteen out of twenty-two months" factor in holding that clear, cogent, and convincing evidence had been adduced justifying the termination of Mother's parental rights. That factor having been rejected by the supreme court as a basis for terminating parental rights, the judgment is left devoid of the required finding of a statutory basis for terminating Mother's parental rights and must be reversed.

■ The parties are in agreement concerning the necessity of reversing the judgment for the reasons discussed above. They differ, however, as to whether the trial court should be allowed to, as the Respondent argues, "reform its final judgment to conform to the evidence and the law." Mother, in her reply brief, insists that, to the contrary, the "critical defect in the judgment here cannot be swept aside by some minor reformation."

Mother correctly notes that in order for the trial court to reform its judgment to address the second and third bases pled by Respondent in support of termination—neglect, and so-called "failure to rectify"—Sections 211.447.4(2) and 211.447.4(3) require the application of multi-faceted tests that the trial court here did not address in its judgment. Granting that statutory mandates to make findings of fact may not be overlooked on appeal, *A.S.O.* at 66, and that a trial court's failure to make such findings amounts to reversible error, *In the Interest of W.S.M.*, 845 S.W.2d 147, 151 (Mo.App. W.D.1993), does not, however, establish that we cannot remand the case to the trial court for the purpose of reopening or reviewing the record to determine if any basis for termination was pled and exists justifying the termination of Mother's parental rights. Indeed, the courts in *A.S.O.*, *In the Interest of A.A.R.*, 39 S.W.3d 847 (Mo.App. W.D.2001), and *W.S.M.* reversed the trial courts' judgments and remanded the cases for entry of findings as required by Section 211.447 and supported by the records in those cases. *See A.S.O.* at 68; *A.A.R.* at 852; *W.S.M.* at 154. Mother cites us to no authority holding to the contrary. We therefore reverse the part of the trial court's judgment terminating Mother's parental rights and remand the case for further proceedings not inconsistent with this opinion. In all other respects, the judgment is affirmed.

BARNEY, P.J., and PREWITT, J., concur.