**In the Interest of B.A. and R.M., Minors.**

**David KIERST, Jr., Juvenile Officer, Respondent,**

v.

**A.M. (Natural Mother), Appellant.**

**No. WD 52323.**

Missouri Court of Appeals, Western District.

Oct. 29, 1996.

---

Steven G. Sakoulas, Kansas City, for appellants.

Lori L. Stipp, Tamara Hatheway, Guardian Ad Litem, Kansas City, for respondent.

Before HANNA, P.J., and BERREY and SMART, JJ.

BERREY, Judge.

A.M. (Mother) appeals from a trial court order terminating her parental rights to her sons, B.A. and R.M. Because Mother admitted knowledge of severe abuse committed by the children's putative father toward a sibling, Angel Hart, which resulted in her death, Mother does not contest the sufficiency of evidence which supports the statutory ground for termination relied upon by the trial court pursuant to § 211.447.2(2)(c), RSMo 1994.[1] Mother instead challenges the sufficiency of the evidence surrounding the trial court's findings under § 211.447.3, and its conclusion that termination of Mother's

parental rights was in the children's best interests. Affirmed.

This case involves the tragic history of a troubled family. The first incident of reported abuse and neglect occurred in December 1992 when R.M., born June 10, 1992, was admitted to the hospital with a diagnosis of moderate to severe malnutrition for which there was no medical explanation. Upon R.M.'s hospital release, the Missouri Division of Family Services (DFS) detained R.M. in its custody and placed him in foster care.

In February 1993, Mother witnessed G.C., the putative father, strike and drown B.A.'s and R.M.'s sibling, Angel, in a bathtub in Independence. Unaware of Angel's murder, DFS relinquished custody of R.M. back to Mother and G.C. under DFS supervision in March 1993. R.M. was thereafter removed from Missouri to California without permission. While in California, Mother finally confessed to police her role in Angel's death and R.M. was immediately taken into protective custody on October 28, 1993. Once R.M. was returned to Missouri, DFS again placed him in foster care where he has since remained. Likewise, B.A. has remained in foster care in DFS custody since shortly after his birth on July 5, 1994.

Mother pleaded guilty to four felony offenses and one misdemeanor offense on December 2, 1994. Specifically, she pleaded guilty to one count of hindering the prosecution of G.C., two counts of endangering the welfare of a child, one count of stealing by deceitfully appropriating public assistance funds and one count of failure to report G.C.'s abuse of Angel. She later received a

---

1. Unless otherwise indicated, all statutory references are to RSMo 1994. The relevant portions of § 211.447 provide that:

2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:

. . . . .

(2) The child has been adjudicated to have been abused or neglected. In determining

whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

. . . . .

(c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, *or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family;* (emphasis added).

five year sentence. On June 15, 1995, G.C. subsequently pleaded guilty to the second degree murder of Angel Hart and was later sentenced to life imprisonment.

Christine Lucero, a DFS social service worker, was assigned to this case in October 1994. Ms. Lucero maintained regular contact with the children and observed them in their foster home. Because a petition for termination of parental rights as to R.M. was filed on July 29, 1994, DFS policy did not allow Mother to communicate with R.M. in any way after that date. It is important to note, however, that Mother did not request visitation with R.M. until after the petition was filed. Consequently, Mother had no significant contact with R.M. after DFS regained custody of him. From October 1994 through January 1995, Ms. Lucero also regularly visited Mother at the Jackson County Detention Center with B.A., who was six-months old at the end of this period. Once the petition for termination of parental rights as to B.A. was filed on January 11, 1995, however, no contact was allowed between Mother and her youngest son.

At trial on November 1, 1995, B.A. was fifteen-months old and R.M. was three-years old. Only Ms. Lucero and Mother were called to testify. Ms. Lucero testified that they were residing in the same foster home and that each child had bonded to their foster parents. She further testified that the foster parents planned to adopt the children. The trial court concluded termination was in the children's best interests and, in accord with DFS' recommendation, terminated Mother's parental rights to B.A. and R.M. The court also made findings as to both B.A. and R.M. on each of the factors listed in § 211.447.3.

The best interest of the child is always the court's utmost concern in a parental rights termination case. *In Interest of N.D.*, 857 S.W.2d 835, 838 (Mo.App.1993). A violation of one or more statutory grounds for termination of parental rights under § 211.447.2 must be proven by clear, cogent and convincing evidence. *In Interest of*

*J.M.*, 789 S.W.2d 818, 821 (Mo.App.1990). However, since Mother does not contest the sufficiency of the evidence surrounding the statutory ground for termination used by the trial court pursuant to § 211.447.2(2)(c), we need focus only on § 211.447.3, which requires the court, in considering whether to terminate parental rights, to make findings on the factors appropriate and applicable to the case. This section provides in full that:

> When considering whether to terminate the parent-child relationship pursuant to subdivision (1), (2) or (3) of subsection 2 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:
>
> (1) The emotional ties to the birth parent;
>
> (2) The extent to which the parent has maintained regular visitation or other contact with the child;
>
> (3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;
>
> (4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;
>
> (5) The parent's disinterest in or lack of commitment to the child;
>
> (6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;
>
> (7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

§ 211.447.3. Mother now challenges the sufficiency of evidence relating to the trial court's findings under subsections (1), (2), (4) and (5).

It is within the trial court's discretion "to make findings on the factors it deems applicable to the case." *In Interest of R.H.S.*, 737 S.W.2d 227, 238 (Mo.App.1987). The trial court's judgment will be reversed only if there is no substantial evidence to support it, if it is contrary to the evidence or if it erroneously declares or applies the law. *In Interest of J.M.*, 789 S.W.2d at 821. In addition, we defer to the trial court's determination of the credibility of the witnesses and examine all the facts in the light most favorable to the trial court's order. *Id.*

Because it is discretionary for the trial court to make findings on the factors it deems applicable, we initially note that the court's unchallenged findings on factors (3), (6) and (7), together or individually, would support the judgments for termination even if Mother's claims had merit. *See In Interest of M.H.*, 859 S.W.2d 888, 897 (Mo.App.1993). Nevertheless, we briefly examine her arguments.

Mother first claims there was little or no evidence to support the trial court's finding under § 211.447.3(1) that there were few if any emotional ties between B.A. and R.M. and their mother, and that, in any event, DFS policy prevented her from establishing emotional ties. To the contrary, there was substantial evidence indicating a lack of emotional ties. For instance, R.M. was seventeen-months old when he was removed from Mother's custody and has spent most of his life in foster care. Similarly, DFS removed B.A. from Mother's custody shortly after his birth and he also has spent most of his life in foster care. The contact Mother has had with B.A. has been limited and took place during her incarceration. Moreover, Ms. Lucero testified that neither B.A. nor R.M. had any emotional ties with Mother. It is appropriate for a trial court to consider the length of time a child is out of a parent's custody and the limited contact during that time. *In Interest of L.M.*, 807 S.W.2d 195, 199 (Mo.App.1991). Finally, we also reject Mother's suggestion that DFS prevented her from establishing a bond with her children. DFS directs its efforts toward family reunification when it first becomes involved in a case. If a parent fails to act in the best interests of a child, however, then that responsibility shifts to DFS because protecting the child's well-being and future development takes priority over family unity. *In Interest of N.D.*, 857 S.W.2d at 841. Thus is the case here.

Second, Mother similarly argues the trial court erred in finding under § 211.447.3(2) that she has not had consistent contact with B.A. and R.M. since DFS policy prevented any contact. Despite Mother's expressed desire to see her children during her incarceration, we again reject her attempt to blame the lack of contact on DFS policy. Mother next argues the trial court erred in finding under § 211.447.3(5) that she had shown a lack of commitment to her children. The evidence of Mother's past behavior, however, quickly repudiates her purported commitment. For example, that she continued to reside with G.C. after he had murdered Angel and allowed R.M. to also reside with G.C. shows a clear lack of commitment to her children's welfare.

Mother finally argues the trial court erred in finding under § 211.447.3(4) that no additional services would likely bring about lasting parental adjustment allowing for reunification within an ascertainable amount of time. Although Mother testified that she is willing to participate in parenting classes or other services, such remedial efforts would likely be futile given the poor state of her demonstrated parenting skills and her extended incarceration. Furthermore, B.A. and R.M. both have shown an attachment to their foster parents and are waiting to be adopted. In this case, adoption is the best opportunity they will have to receive the care they need to grow and develop within a stable family environment.

We find that there was sufficient evidence for the trial court to make findings as to each of the four factors in § 211.447.3 challenged by Mother. The trial court therefore did not

abuse its discretion in making its findings, and each of the trial court's findings support its conclusion that termination was in the children's best interests.

Affirmed.

All concur.