**In re S.L.B., S.N.B. and R.J.B., Minors.**

**John R. JOHNSON, Chief Juvenile Officer, Respondent,**

v.

**A.B. (Natural Mother), Appellant.**

**No. WD 53888.**

Missouri Court of Appeals, Western District.

March 10, 1998.

Candace J. Barnes, St. Joseph, for Appellant.

David R. Schmitt, St. Joseph, Guardian Ad Litem.

James A. Nadolski, St. Joseph, for Respondent.

Before ELLIS, P.J., and HOWARD and RIEDERER, JJ.

HOWARD, Judge.

Mother appeals from the trial court's judgment terminating her parental rights pursuant to § 211.447 RSMo 1994.[1] The mother asserts six points on appeal. First, she contends the trial court erred in terminating her parental rights pursuant to § 211.447.2(2) because the court considered findings pertaining to factors (a) and (c) that were contrary to law, erroneous, and not supported by clear, cogent and convincing evidence. Second, she claims the court erred in terminating her rights pursuant to § 211.447.2(3) because 1) the trial court failed to make a specific finding on factor (d); 2) the trial court's findings were erroneous and not supported by clear, cogent and convincing evidence; 3) the trial court's findings were contrary to law because the court failed to state the terms of a social service plan as required by factor (a). Third, she contends the trial court erred in terminating her parental rights pursuant to § 211.447.2(3) because the court's finding that there is little likelihood that conditions will be remedied at an early date was not supported by clear, cogent and convincing evidence. Fourth, she claims the trial court erred in terminating her parental rights pursuant to §§ 211.447.2(2)(a) or 211.447.2(3) because findings that she could

---

1. All statutory references are to RSMo 1994.

not provide the necessary parenting were not supported by clear, cogent and convincing evidence and were against the greater weight of the evidence. Fifth, she contends the trial court erred in terminating her parental rights pursuant to §§ 211.447.2(2)(a), 211.447.2(2)(c) and 211.447.2(3) because the findings required by § 211.447.3 were not supported by clear, cogent and convincing evidence and were an abuse of the trial court's discretion. Sixth, she claims the trial court erred in terminating her parental rights pursuant to § 211.477.1 because the finding that termination was in the best interests of the minor children was against the overwhelming weight of the evidence.

We affirm.

## Facts

This case involves three children: S.L.B., a female minor child, born June 20, 1988; S.N.B., a female minor child, born September 21, 1989; and R.J.B., a male minor child, born November 18, 1991. All three of the children are "special needs" children. S.L.B. has generalized epilepsy, and attention deficit and hyperactive disorders. S.N.B. has post-traumatic stress disorder, and attention deficit and hyperactive disorders. R.J.B. has serious developmental delays.

The children's natural father is not a party to this action, having relinquished his parental rights to the children on April 3, 1996. The mother's first contact with the Missouri Division of Family Services ("DFS") was a result of a substantiated child neglect report against her in December 1990, whereby S.L.B., who was two and a half years old at the time, was found roaming the streets several blocks from her home. At this time, DFS began working with the mother and continued working with her for several months. The mother moved to Kansas in 1991 and returned to Missouri in September 1992, and DFS resumed preventative services at that time. A second substantiated neglect report was found against the mother in April 1993, as a result of the mother not seeking treatment for severe burns S.L.B. received on her buttocks and legs. The children were placed in foster care and relative care at that time, with the two younger children being returned within three months and S.L.B. remaining in foster care until March 1994.

Following allegations that the children's natural father had sexually abused S.L.B. and S.N.B., the children were placed in foster care in July 1995. On July 12, 1995, the juvenile court entered a formal order placing the children in the custody of the DFS. The court took temporary custody of the minor children on August 3, 1995, based on allegations that the natural father had sexually abused the two girls and that the mother had knowledge of the sexual abuse and failed to protect them from such abuse. On September 14, 1995, the juvenile court entered a final order in which it found that S.L.B. and S.N.B. had been sexually abused by their father, that the abuse placed R.J.B. at risk, and that their mother's limited mental capacity made her incapable of protecting them from such abuse. The court ordered that the children be placed in the care and custody of DFS for placement in foster care.

On December 19, 1996, the trial court terminated the mother's parental rights pursuant to §§ 211.447.2(2) and 211.447.2(3). This appeal followed.

## Standard of Review

■ The standard of review in termination of parental rights matters requires that we sustain the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *In Interest of M.R.*, 894 S.W.2d 193, 195 (Mo. App. E.D.1995). The best interests of the children are always the court's utmost concern in a parental rights termination case. *In Interest of B.A.*, 931 S.W.2d 926, 929 (Mo.App. W.D.1996). We defer to the trial court's determination of the credibility of the witnesses and examine all the facts in the light most favorable to the trial court's order. *Id.* at 930.

## Discussion

The mother's first point on appeal is that the trial court erred by terminating her pa-

rental rights pursuant to § 211.447.2(2) [2] because the court considered findings pertaining to factors (a) and (c) that were contrary to law, erroneous, and not supported by clear, cogent and convincing evidence. She contends there is no statutory requirement that she be able to independently provide the children with necessary care, custody and control. She further contends that she had no knowledge, nor should she have known, that the sexual abuse was occurring.

■ In order to terminate parental rights under § 211.447.2, a court must make two findings. It must find that at least one of the grounds for termination set forth in the statute was adequately pleaded and proved. *In Interest of S.C.*, 914 S.W.2d 408, 411 (Mo. App. W.D.1996). The court must also find that the termination is in the children's best interests. *In Interest of H.R.R.*, 945 S.W.2d 85, 87 (Mo.App. W.D.1997).

■ When terminating parental rights pursuant to § 211.447.2(2), the court is required to consider and make findings as to all four conditions or acts enumerated in the statute. *In Interest of S.C.*, 914 S.W.2d at 411. However, proof of one of the conditions or acts is sufficient for termination. *Id.* In this case, the trial court made findings of fact in regard to all four factors set forth in the statute and found that there was clear, cogent and convincing evidence that justified the termination of the mother's parental rights.

The mother concedes that the three children have been adjudicated to have been abused or neglected, as required by § 211.447.2(2). We now consider whether there was sufficient evidence to support the trial court's finding that termination of the mother's rights was justified pursuant to § 211.447.2(2). Because the mother only claims that the trial court's findings were not adequate as to factors (a) and (c), we only consider the adequacy of the evidence on those two factors and whether those factors by themselves supported the trial court's finding.

■ As to factor (a), the trial court found that the mother suffers from a mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders her unable to knowingly provide the children the necessary care, custody and control. There was substantial evidence that the mother's mental condition makes her incapable of adequately caring for her children. Sandra Miller, a DFS social worker, testified that the mother frequently failed to take S.L.B. to her medical appointments, and that if left with only the mother to take care of them, the children would be at risk of physical and emotional harm. Susan Rice, a psychotherapist and social worker and the children's counselor, testified that all three children are special needs children, and that someone of the mother's mental capacity could not provide for them. She further testified that if

---

2. Section 211.447.2, in relevant part, provides:

The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist: (2) The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent: (a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

(b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control; (c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or (d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for his physical, mental, or emotional health and development.

the children were returned to their mother's custody, the potential for psychological and emotional harm to them would be great. Dr. Kenneth Hines, a clinical psychologist, also testified that the mother's mental condition would not enable her to take care of three special needs children.

There was overwhelming evidence that the mother lacks, and is incapable of learning, even the most basic parenting skills. Sandra Miller testified that despite the involvement of four social service agencies, she had seen no improvement in the mother's parenting skills. She further testified that the mother had quit a family preservation services program offered by DFS. Donna Searcy, R.J.B.'s preschool teacher, testified that R.J.B. came to school dirty, smelling of urine, and that the mother would frequently give R.J.B. only a snack cake for lunch. Linda Watkins, the children's foster mother, testified that when the children went to live with her, they had pinworms and lice, and they did not know how to bathe or brush their teeth. She also testified that despite numerous requests to the mother not to give R.J.B. chocolate because it gave him serious digestive problems, she continued to do so. Carolyn Tonnies, the Albany Regional Center service coordinator, testified that the mother was incapable of grocery shopping and planning meals for the children. Diana Kinsey, a DFS service worker, testified that she had seen no progress in the mother's parenting skills. She testified that the mother was unable to discipline the children, and that all attempts to teach the mother parenting skills had failed. Sheila Miller, a DFS social service worker, testified that there are no services, programs, or agencies that could make a difference that would allow the children to be returned to the mother.

As to factor (c), the trial court found that the two girls were subjected to recurrent acts of sexual abuse by their natural father, and that the acts of abuse were under circumstances that would "indicate directly that [the mother] knew or should have known

that such acts were being committed towards the children...." Again, the evidence to support the trial court's finding is overwhelming. Jill Voltmer, a detective with the St. Joseph Police Department, testified that she informed the mother of the children's allegations of abuse by their father immediately after interviewing the children in July 1995. Hazel Walters, a DFS investigator, testified that the girls told her that they had told their mother of the abuse, and Ms. Walters thereafter confronted the mother with the girls' allegations. Susan Rice, the children's counselor, testified that one of the girls told her that her parents engaged in sexual activity while she was in the bed. Linda Watkins, the children's foster mother, testified that the girls told her that their mother was in the bed with them when their father sexually abused them, and that the girls had told their mother about the abuse. M.P. and J.W., the mother's own sisters, testified that they confronted the mother with the girls' allegations of abuse. Despite being told repeatedly by numerous sources that the girls were being abused by their father, the mother continued to live with the children's father until October 1996, less than a month before trial. At trial, the mother testified she still loved the man who abused her children, and that she had called him two days prior to trial. Appellant's own testimony indicates that even though she was told of the girls' allegations, she did not believe them until a couple of months before trial. The mother owed these children a duty to protect them and to report their abuser. *In Interest of C.S.*, 910 S.W.2d 811, 813 (Mo. App. E.D.1995). The testimony of these seven witnesses, including the mother herself, provided clear, cogent and convincing evidence to support the trial court's finding that the mother knew or should have known of the abuse.

After finding that adequate evidence supported termination pursuant to § 211.447.2(2), the trial court was required to find that termination was in the children's best interest, pursuant to § 211.447.3.[3] *In*

---

3. Section 211.447.3 enumerates seven factors for the court to consider in deciding whether termination is in a child's best interest. These include: 1) the emotional ties to the birth parent;

2) the extent to which the parent has maintained regular visitation or other contact with the child; 3) the extent of payment by the parent for the cost of care and maintenance of the child when

*Interest of N.D.*, 857 S.W.2d 835, 840 (Mo. App. W.D.1993). In her fifth point on appeal, the mother asserts that the trial court's findings pursuant to this section were not supported by clear, cogent and convincing evidence, and were an abuse of the trial court's discretion.

■ It is within the trial court's discretion to make findings on the factors it deems applicable to the case. *In Interest of B.A.*, 931 S.W.2d at 930. In this case, the trial court made findings on six of the seven factors, at least four of which weighed against the mother. Based on the evidence presented at trial, the court found that 1) there were little or no emotional ties between the mother and the children;[4] 2) the mother maintained regular visitation with the children; 3) there were no additional services that would likely enable a return of the children within an ascertainable period of time; 4) the mother's lack of commitment to the children had been "profoundly demonstrated" by her allowing the sexual abuse of her daughters and continuing her relationship with their abuser; 5) the deliberate, abusive acts of the father were of such a nature that the mother knew or should have known of the substantial risk of physical or mental harm being done to the girls; 6) while the mother's felony conviction of endangerment to the welfare of a child did not result in incarceration, and thus was not relevant to this specific statute, it was indicative of the ongoing neglect and abuse of the minor children at the hands of the mother. Without reiterating the specific evidence that supports the court's findings under this section, we find that there was clear, cogent and convincing evidence to support all of these findings by the trial court, as well as its

ultimate conclusion that terminating the mother's parental rights would be in the children's best interests.

Because we find that clear, cogent and convincing evidence supported the trial court's termination of the mother's parental rights pursuant to § 211.447.2(2), we find it unnecessary to consider the mother's other points on appeal.

The judgment of the trial court is affirmed.

All concur.

---

financially able to do so including the time that the child is in the custody of the division or other child-placing agency; 4) whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time; 5) the parent's disinterest in or lack of commitment to the child; 6) the conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights; 7) deliberate acts of the parent or acts of another of which the parent knew or should have known

that subjects the child to a substantial risk of physical or mental harm.

4. This is the only factor not previously discussed in this opinion. The evidence to support the trial court's finding on this factor includes the testimony of Susan Rice that the children did not want to visit their mother or go back to live with her, testimony of Sheila Miller that the mother has problems interacting with the children and that she saw no bond between the mother and the children, and the testimony of Linda Watkins that there was no bonding or emotional connection between the mother and the children.