

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
IN THE INTEREST OF: | ) | No. ED112626 |
A.D.G. AND B-J. J. | ) | |
| ) | Appeal from the Circuit Court of |
| ) | Montgomery County |
| ) | |
| ) | Honorable Nathan A. Carroz |
| ) | |
| ) | |
| ) | Filed: November 19, 2024 |

**Introduction**

E.R.G. ("Mother") appeals the judgment terminating her parental rights to her children, A.D.G. ("Son") and B-J.J. ("Daughter"; "Children," collectively). Mother claims there was not substantial evidence supporting the circuit court's judgment regarding (1) the grounds for termination or (2) its finding termination was in Children's best interests. Because substantial evidence supported both findings, Points I and II are denied. The circuit court's judgment is affirmed.

**Factual and Procedural Background**

Daughter was born on September 6, 2017. Son was born on November 21, 2018. Mother has had repeated contact with the Children's Division ("Division") before this proceeding. In September 2017, Division received two newborn crisis referrals for Daughter. In May 2018, it received a Child Abuse and Neglect report for Mother's neglect of Daughter. A few days later,

Division removed Daughter from Mother's care because of the unsanitary conditions of her home and because she left drug paraphernalia within Daughter's reach. Daughter was reunified with Mother almost a year later. A few weeks after reunification, the State received a Child Abuse Report because Mother struck Daughter so forcefully she left a handprint on her leg. Finally, there was a service referral for Mother in April 2020 because of concerns about her physical and mental health.

On November 3, 2021, Mother called Division and requested it take protective custody of Children because she had been struggling with suicidal ideations for a couple weeks. She did not believe she was in the correct mindset to care for Children. On November 4th, Division filed a petition alleging Mother failed to provide Children the proper care, custody, and support under § 211.031, RSMo Cum. Supp. 2021. Division took protective custody of Children that same day.

On January 3, 2022, Mother entered into a written service plan agreement with Division. She agreed to: (1) find and attend weekly counseling or as recommended by the counselor; (2) speak with a psychiatrist to evaluate mental health and treatment options; (3) find and maintain permanent housing; (4) sign and approve all release forms for medical treatment; (5) schedule supervised visits with Children every other week; (6) complete a drug assessment; and (7) provide drug analysis as requested.

Children were placed into foster care in February 2022. Son— now three years old—could barely speak and was not toilet trained. Both Children struggled with their emotional regulation. They would pull their hair, bang their heads against the wall, hold their breath until they turned blue, and bite themselves. Daughter was diagnosed with adjustment disorder, post-traumatic stress disorder, and additional defiance disorder. Son was diagnosed with adjustment disorder, post-

2

traumatic stress disorder, and reactive attachment. Within a month of placement, Son's foster parents toilet trained him and improved his speech.

The juvenile division adjudicated Children as abused or neglected under § 211.031 and § 211.010, RSMo Cum. Supp. 2022, on February 24, 2022. On March 27, 2023, the juvenile officer filed a petition to terminate Mother's parental rights.[1] On August 22, 2023, the circuit court conducted a hearing on the petition.[2] Children's foster mother testified she and her husband plan to adopt Children. The circuit court terminated Mother's parental rights under § 211.447.5(2) ("abuse and neglect"), § 211.447.5(3) ("failure to rectify"), and § 211.447.5(5)(a) ("consistent pattern of specific abuse").[3] The circuit court further found termination of Mother's parental rights was in Children's best interests.

This appeal follows. This Court will include additional factual history as necessary to address the parties' arguments.

## Standard of Review

This Court "will affirm the [circuit] court's judgment terminating a party's parental rights unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Int. of D.L.P.*, 638 S.W.3d 82, 88 (Mo. App. E.D. 2021). This Court defers to the circuit court's determination regarding witness credibility and views "the evidence in the light most favorable to the [circuit] court's judgment, disregarding all contrary evidence and inferences." *Int. of D.L.S.*, 606 S.W.3d 217, 223 (Mo. App. W.D. 2020). "The judgment will be reversed only if we are left with a firm belief the judgment is wrong." *Int. of*

---

[1] Mother and Father are no longer in a relationship. As of the filing of the petition, Children had not mentioned Father for more than a year. Father's parental rights were terminated in the same proceeding. He has not appealed that judgment nor, despite Division's best efforts, did he have any meaningful contact with Division throughout this case.
[2] After the trial, the circuit court severed Son and Daughter's cases. Its judgments for each child are nearly identical; the only differences are the names listed and the pronouns used. For this reason, this Court's analyses will proceed as if there were only one judgment concerning both Children.
[3] All further statutory references are to RSMo. Cum. Supp. (2023), unless otherwise specified.

*D.L.P.*, 638 S.W.3d at 88. "The party seeking termination bears the burden of proof in a termination of parental rights proceeding." *Int. of A.O.B.*, 666 S.W.3d 295, 300 (Mo. App. E.D. 2023).

"A parent's right to raise her children is a fundamental constitutional right." *Int. of D.L.P.*, 638 S.W.3d at 88. As a result, "a court's decision to terminate parental rights is an exercise of an awesome power we do not review lightly." *Id.*

"The termination of a party's parental rights requires a two-step analysis." *In re S.Y.B.G.*, 443 S.W.3d 56, 59 (Mo. App. E.D. 2014). First, the circuit court "must find by 'clear, cogent, and convincing evidence' that one or more grounds for termination of parental rights exists." *Id.* (quoting *In re G.G.B.*, 394 S.W.3d 457, 472 (Mo. App. E.D. 2013)). "'Clear, cogent, and convincing evidence' is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the trier of fact is left with an abiding conviction that the evidence is true." *Id.* (quoting *In re E.F.B.D.*, 245 S.W.3d 316, 319 (Mo. App. S.D. 2008)). "This standard may be satisfied even when evidence contrary to the [circuit] court's finding is presented or the evidence might support a different conclusion." *Id.*

Second, "if the [circuit] court finds at least one of the statutory grounds for termination exists," it must "determine whether, by a preponderance of the evidence, the termination of parental rights is in the child's best interests." *Int. of D.L.P.*, 638 S.W.3d at 89. Determining a child's best interests is a "subjective assessment based on the totality of the circumstances." *Id.* This Court reviews "the [circuit] court's best interest[s] determination for an abuse of discretion." *Id.* A circuit court abuses its discretion when its ruling is "clearly against the logic of the circumstances and so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (quoting *In re S.Y.B.G.*, 443 S.W.3d at 59).

**Discussion**

In Point I, Mother argues there was no substantial evidence to support the judgment terminating her parental rights under § 211.447.5(2) ("abuse and neglect"), § 211.447.5(3) ("failure to rectify"), and § 211.447.5(5) ("specific abuse").[4] "[O]nly one statutory ground need be proven to support termination." *Int. of A.O.B.*, 666 S.W.3d at 301 (quoting *Mo. Dep't of Soc. Servs., Children's Div. v. B.T.W.*, 422 S.W.3d 381, 394 (Mo. App. W.D. 2013)). Because Division proved, and the circuit court found, there were grounds for termination under § 211.447.5(3) ("failure to rectify"), this Court will only address this ground.[5]

*Point I: No Substantial Evidence to Support Termination of Mother's Parental Rights under*
*§ 211.447.5(3) ("Failure to Rectify")*
*Party Positions*

In Point I, Mother argues there was no substantial evidence to support the judgment terminating her parental rights under § 211.447.5(3) ("failure to rectify"). Division contends the testimony and exhibits demonstrate there was substantial evidence Mother had a chemical dependency under § 211.447.5(3)(d).

---

[4] Mother's arguments are not preserved for three reasons. First, Point I is multifarious because it groups together multiple, independent claims the circuit court erred in its three grounds for termination into one point. *See Barbieri v. Barbieri*, 633 S.W.3d 419, 432 (Mo. App. E.D. 2021); *In re S.Y.B.G.*, 443 S.W.3d at 59 (splitting each ground into a separate point). Second, Mother did not include a "concise statement describing whether the error was preserved for appellate review," as required by Rule 84.04(e). Third, Mother was required to file a post-trial motion because her brief makes allegations of error "relating to the form or language of the judgment" when she alleged the circuit court made "insufficient" findings. Rule 78.07(c). Mother asserts, without authority, she made a "substantial evidence" argument, which she asserts is "essentially" a sufficiency of the evidence challenge. Sufficiency of the evidence challenges do not require preservation. *Payne v. Nilsson*, 679 S.W.3d 543, 547 n.2 (Mo. App. W.D. 2023). Substantial evidence challenges do. *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 851-52. (Mo. banc 2018). However, because Mother's arguments are readily discernible, this Court exercises its discretion to review the point *ex gratia*. *In Int. of N.R.P.*, 492 S.W.3d 634, 638 n.6 (Mo. App. E.D. 2016).

[5] Division argues Mother did not faithfully follow the substantial evidence challenge framework as laid out in *Houston v. Crider*, 317 S.W.3d 178 (Mo. App. S.D. 2010). "While we agree that [Mother] fail[s] to pursue a meaningful *Crider* analysis, we still choose to review [Mother's] argument on the merits which is consistent with our philosophy and preference to dispose of a case following a meaningful consideration of the arguments rather than dismiss the matter …." *Lukefahr v. Taylor*, 673 S.W.3d 892, 896 (Mo. App. E.D. 2023).

*Analysis*

"Section 211.447 provides the statutory grounds for judicial termination of parental rights." *Int. of A.O.B.*, 666 S.W.3d at 301. "Section 211.447.5(3) is commonly referred to as 'failure to rectify.'" *Int. of A.M.W.*, 652 S.W.3d 225, 235 (Mo. App. W.D. 2022) (quoting *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 625 (Mo. banc 2014)).

> [T]ermination based on failure to rectify may be granted when the following elements of section 211.447.5(3) are satisfied: 1) the child has been under the court's care for at least a year; and 2) the conditions which led to the child being taken into care still persist, or 'conditions of a potentially harmful nature continue to exist'; and 3) 'there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.'

*Id.* at 235–36 (quoting § 211.447.5(3)).

In determining whether to terminate parental rights under § 211.447.5(3), the circuit court must consider and make findings on these factors:

> (a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
>
> (b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
>
> (c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
>
> (d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control[.]

*Id.* (quoting § 211.447.5(3)(a)–(d)). "These factors 'are not separate grounds for termination by themselves, but rather categories of evidence that the court may consider along with all other

6

relevant evidence in determining whether grounds for termination exist under section 211.447.5(3).'" *Int. of A.O.B.*, 666 S.W.3d at 301 (quoting *Int. of K.A.M.L.*, 644 S.W.3d 14, 23 (Mo. App. E.D. 2022)). "Even though a court must make findings on all four factors, 'evidence supporting just one factor is sufficient to terminate parental rights.'" *Id.* (quoting *Int. of K.A.M.L.*, 644 S.W.3d at 23). Because evidence supported a § 211.447.5(3)(d) determination, this Court will only address this factor.[6]

*Section 211.447.5(3)(d) Chemical Dependency*

Mother argues there was no substantial evidence she suffered from a chemical dependency to illegal substances. Division argues Children's case manager's testimony and the properly admitted positive drug tests provide substantial evidence Mother suffered from an untreated chemical dependency which prevented her from consistently providing the necessary care, custody, and control over Children.

Under § 211.447.5(3)(d), "[c]hemical dependency is of sufficient severity to support termination only if it (1) 'prevents the parent from consistently providing the necessary care, custody and control over the child' and (2) 'cannot be treated so as to enable the parent to consistently provide such care, custody and control.'" *Int. of A.O.B.*, 666 S.W.3d at 303–04 (quoting *Int. of K.M.A.-B.*, 493 S.W.3d at 469). "In other words, not all chemical dependency is

---

[6] Mother argues prior precedent has misinterpreted § 211.447.5(2) and § 211.447.5(3). She contends the wealth of authority holding that the presence of just one factor is sufficient to terminate parental rights under § 211.447.5(2) and § 211.447.5(3) is erroneous because the factors listed in those provisions are just that—factors. She asserts the true finding of termination must come from the top-level finding of abuse or neglect under § 211.447.5(2) or of a failure to rectify under § 211.447.5(3). Subsequently, if there is not substantial evidence supporting the top-level findings, this Court cannot proceed to evidence produced under the factors. Mother's distinction between the top-level termination grounds and the factors beneath them is not supported by any authority. The factors are not "separate grounds for termination by themselves, but rather categories of evidence that the court may consider along with all other relevant evidence in determining whether grounds for termination exist …." *Int. of K.A.M.L.*, 644 S.W.3d at 23 (quoting *In the Interest of K.M.A.-B.*, 493 S.W.3d 457, 474 (Mo. App. E.D. 2016)). In other words, a finding the parent suffers from an untreatable chemical dependency which prevents her from providing the necessary care, custody, and control over her children under § 211.447.5(2)(b) is evidence the parent has abused or neglected her children under § 211.447.5(2). *Int. of A.O.B.*, 666 S.W.3d at 303-04. A dispositive category of evidence is not a separate ground for termination but rather a sufficient condition for it.

sufficient to support termination. There must be evidence that the parent has an untreatable addiction that renders the parent unable to adequately care for the children." *Int. of K.M.A.-B.*, 493 S.W.3d at 469 (discussing nearly identical language in § 211.447.5(2)(b)). Here, the circuit court found Division proved this factor because Mother abused methamphetamines and amphetamines and she had been unsuccessful participating in and completing drug treatment.

The record demonstrated Mother has a chemical dependency on methamphetamines and amphetamines. She took twenty-one drug tests from January 3, 2022, to February 25, 2023. She either refused to test, admitted to using methamphetamines or amphetamines, or tested positive for those drugs seventeen times, including the last five tests to which she submitted a sample. Mother has not submitted to a drug test since February 25, 2023. Substantial evidence thus shows Mother has a chemical dependency upon methamphetamines and amphetamines.

First, Mother's chemical dependency upon methamphetamines and amphetamines prevents her from providing the necessary care, custody, and control over Children because of its impact on her ability to interact with Children. Before this case, Division removed Daughter from Mother's care because there was drug paraphernalia within Daughter's reach. In this case, Mother could not see Children for the first month after she relinquished them to Division because it was "too hard" for her. After this, she inconsistently scheduled ten visits between December 23, 2021, and June 1, 2022. She attended eight of those visits. During the June 1st visit, Division noticed Children exhibited disturbing coping mechanisms. Son would cry from the time he left the building to the time he arrived home, would hit his head, bite himself, and pull his own hair. Daughter would break toys, pull her hair, scratch herself, bang her head on the walls, and bite her arm. Division required future visits be therapeutically supervised. On October 18, 2022, Mother showed up forty-five minutes late. When she revealed she had used methamphetamines the night before,

Division terminated the visits until Mother enrolled in a drug treatment program. Mother did not see Children again until January 4, 2023, after she announced she would be attending an in-patient drug treatment program.[7] During this therapeutically supervised visit, Division noticed Children continued to demonstrate disturbing coping mechanisms in response to seeing Mother. Division paused the visits until Children received therapy.

Mother last saw Children on July 26, 2023. During this visit, a Division counselor testified Children "seemed to want to take care of mom and make sure that she was okay, so they were taking care of her needs instead of taking care of their own." Children's disturbing coping mechanisms resurfaced after this meeting. Mother was unable to care for herself such that her six and four-year-old children would become distraught after seeing her. Mother's chemical dependency resulted in her inconsistently scheduling supervised visits, showing up late to those visits, spending months without seeing Children, and causing disturbing coping mechanisms in Children. This required therapeutically supervised visits to cease because of the harm the visits inflicted on Children. The circuit court did not abuse its discretion in finding these actions established Mother was a parent whose chemical dependency prevents her from providing the necessary care, custody, and control over Children.

Second, Mother's chemical dependency on methamphetamines and amphetamines cannot be treated. Mother has completed no drug treatment program. While she has participated in an outpatient drug treatment program, her treatment plan required her to complete an in-patient drug program. Mother briefly attended one, but left the same day she arrived. In reviewing the record as a whole, Mother was unwilling or unable to remain sober throughout this entire proceeding, refused to submit to drug testing in the six months before the hearing, could not complete one day

---

[7] The record is silent on the date when Mother informed Division she would attend an in-patient drug treatment program.

of in-patient drug treatment, and, even when Division conditioned her seeing Children upon her seeking treatment, she could not complete such treatment. These actions demonstrate a "lack of either desire or ability to alter her behavior"—even when those behaviors threatened to terminate her parental rights. *Int. of E.R.M.S.*, 667 S.W.3d 239, 252 (Mo. App. E.D. 2023). It was not an abuse of discretion to find these actions demonstrated Mother's chemical dependency cannot be treated.

Because there was substantial evidence Mother's chemical dependency (1) prevented her from consistently providing the necessary care, custody and control over Children and (2) cannot be treated to enable her to consistently provide such care, custody and control, the circuit court did not err in terminating her parental rights under § 211.447.5(3)(d). Point I is denied.

*Point II: Section 211.447.7 Best Interests Determination*
*Party Positions*

In her second point, Mother claims substantial evidence did not support the circuit court's findings that termination of her parental rights was in Children's best interests. Division contends the record and properly admitted exhibits provide substantial evidence supporting the circuit court's judgment.

*Analysis*

"Once the [circuit] court identifies grounds for termination of parental rights, it must then analyze the seven factors under section 211.447.7 and determine whether termination is in the child's 'best interest[s].'" *Int. of A.O.B.*, 666 S.W.3d at 305 (quoting *Int. of K.A.M.L.*, 644 S.W.3d at 25). There are seven factors courts evaluate in making this determination:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

10

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

Section 211.447.7(1)–(7).

"[A] finding that termination is in the child's best interest is a subjective assessment based on the totality of the circumstances." *Int. of E.R.M.S.*, 667 S.W.3d at 253 (quoting *Int. of A.M.W.*, 652 S.W.3d at 244). This Court "will not reweigh the evidence but only review the [circuit] court's best-interest determination for an abuse of discretion." *Id*. "When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the [circuit] court's assessment of the evidence." *In Int. of J.P.B.*, 509 S.W.3d 84, 90 (Mo. banc 2017) (quoting *J.A.R.*, 426 S.W.3d at 626).

The circuit court made these findings regarding the best interests of Children: (1) they have very little emotional ties to Mother; (2) Mother has not maintained regular contact as visitation has been sporadic and infrequent; (3) Mother has not contributed financially for the cost of care and maintenance of Children; (4) because of Mother's inconsistency in completing her plans, programs, and goals, additional services would not bring about lasting parental adjustment; (5) Mother has shown minimal interest in Children and has not shown commitment to them;

11

(6) Mother has not been convicted of any felony; and (7) Mother's deliberate acts subjected Children to a substantial risk of physical or mental harm. The circuit court concluded termination of Mother's parental rights was in Children's best interests.[8]

### A. Emotional Ties—Section 211.447.7(1)

Mother argues the circuit court's finding Children had "very little emotional ties to [Mother], due to [Mother's] minimal and short interactions" was not supported by substantial evidence. She asserts there was evidence presented that she and Children had close emotional ties. Division contends Mother is merely trying to re-weigh the evidence and she misunderstands this Court's standard of review.

Mother points to evidence in the record that conflicts with the judgment. She argues the only testimony supporting this factor was from Children's case manager, who testified Mother had not seen Children for a month before trial. She also posits trial exhibits demonstrate a history of communication between Mother and Division. Finally, she argues Children's disturbing coping mechanisms after their visits with her are an indication of an emotional tie because only children with such ties display such strong emotions.

There was substantial evidence in the record to support the finding Mother had very little emotional ties to Children. The record demonstrates Mother did not see Children from November 4, 2021 to December 22, 2021, because of her mental health crisis. From December 23, 2021 to June 1, 2022, Mother saw Children eight times during inconsistently scheduled supervised visits. After Division mandated the visits be therapeutically supervised because of Children's disturbing

---

[8] Division cites *In re L.M.*, 212 S.W.3d 177, 187 (Mo. App. S.D. 2007), for the proposition that an argument which only cites individual factors, instead of the ultimate conclusion that termination is in the child's best interests, preserves nothing for review. While Mother never specifically uses the phrase "totality of the circumstances," in her heading she writes, "THE TRIAL COURT'S DETERMINATIONS UNDER § 211.447.7 WERE INSUFFICIENT IN REGARD TO THE BEST INTEREST OF THE CHILDREN." Section 211.447.7 includes both the factors and the ultimate conclusion. Mother thus addresses both the factors and the ultimate conclusion.

12

coping mechanisms, Mother did not see Children from June 2nd to September 6th. After Division required Mother in October 2022 to enter into a drug treatment program before seeing Children again, she went two-and-a-half months without seeing them. Mother saw Children only twice in 2023: once in January and once in July. Considering Mother's past interactions with Division, Daughter has been in alternative care for more than half of her life. Son has been in alternative care for almost half of his life. For much of Children's lives, Mother showed up inconsistently every two or three weeks, would disappear for months, would re-appear again, then would disappear once more. It is hard to imagine any child forging an emotional tie with such an inconstant figure. *In Int. of B.A.*, 931 S.W.2d 926, 930 (Mo. App. W.D. 1996). It is for this reason Children call Mother by her first and last name instead of "Mom." And it is for this reason Children's case manager testified there is no healthy emotional tie between Mother and Children. Substantial evidence thus supports the circuit court's finding Children have "very little emotional ties to [Mother]."

Courts have held that children serving in a "parentified role" demonstrate a lack of emotional ties. *In re A.T.*, 88 S.W.3d 903, 908 (Mo. App. S.D. 2002) (overruled on other grounds by *In re M.D.R.*, 124 S.W.3d 469, 472 n.3 (Mo. banc 2004)). A child serves in a "parentified role" when they act as protectors of their parents. *Id*. This inversion of the typical parent-child relationship can be "unhealthy, destructive, and counterproductive." *Id.* Here, a Division counselor testified Children's disturbing coping mechanisms resulted from their desire to "take care of mom and make sure she was ok." This inversion of the typical parent-child relationship is an indication of a dysfunctional family dynamic, not an emotional tie.

Mother's argument regarding Children's responses to their visits with her also misunderstands this Court's standard of review. Where there are two reasonable inferences, this

13

Court defers to the circuit court's assessment of the evidence. *In Int. of J.P.B.*, 509 S.W.3d at 90. One inference from this evidence is Children reacted so strongly because they have deep emotional ties. Another, equally valid inference is the absence of an emotional tie causes these outbursts. This Court's standard of review dictates we defer to the circuit court's determination the outbursts were due to the lack of an emotional tie.

### B. Regular Visitation—Section 221.447.7(2)

Mother argues she visited Children every other week for a year and eight months, only missing two visits during that time. Division contends Mother misconstrues the record. As discussed, Mother did not see Children from November 4, 2021 to December 22, 2021, because of her mental health crisis. She attended eight visits inconsistently scheduled every other week between December 23, 2021 to June 1, 2022. From June 2, 2022 to August 23, 2023, Mother saw Children three times. This is not regular visitation, as Mother contends. The circuit court's finding regarding visitation is supported by substantial evidence.

### C. Financial Contributions—Section 221.447.7(3)

Mother argues Division did not meet its burden of proving she was financially able to contribute to the care and maintenance of Children. She also argues the circuit court did not consider the small contributions she made. "A parent has the responsibility to provide financial support even while the child is in the custody of the Children's Division and even if no support has been ordered." *In re G.G.B.*, 394 S.W.3d at 474. Evidence a parent continued their alcohol and/or drug habits supports a finding they were able to provide financial support for their children. *Id.* Token gestures of support do not constitute financial support. *Id.* Token gestures of support are those of nominal worth; including, but not limited to, gifts, trinkets, meals and/or a few pairs of clothing. *Id.*

Here, Mother continued her illicit drug habits throughout Children's time with Division. While she brought some toys to the supervised visits, these nominal gifts were merely token gestures of support. These actions provide substantial evidence Mother did not contribute financially to Children even though she was able to do so.

*D. Additional Services Are Not Likely to Bring About Lasting Parental Adjustment—*
*§ 211.447.7(4)*

Mother next argues there was no substantial evidence to support the circuit court's finding that due to her "inconsistency and failure to follow through with plans, goals, and programs, additional services would not likely bring about lasting parental adjustment enabling" reunification. Mother argues she has been consistent in attending outpatient treatment. Children's case manager testified Mother initially had attended a drug treatment program successfully. However, when pressed by Division, she testified Mother has not substantially completed the drug assessment because the outpatient plan requires Mother to attend in-patient drug treatment. As discussed above, Mother has refused to do so. This refusal demonstrates "inconsistency and failure to follow through with plans, goals and programs …" as the circuit court found.

Further, Mother has not completed her written service agreement with Division, which contained seven goals. The agreement mandated Mother: (1) find and attend mental health counseling; (2) speak with a psychiatrist to evaluate mental health and treatment options; (3) find and maintain a stable living arrangement; (4) sign and approve all medical release forms; (5) attend supervised visits with Children every other week; (6) complete a drug assessment; and (7) provide urine analysis. Mother signed and approved all medical release forms and completed a drug assessment. As to the rest, she has been discharged from counseling because she did not attend her scheduled appointments, alleged she spoke with a psychiatrist but never provided evidence of this claim, has moved between her own apartment and her boyfriend's apartment, has gone months

15

without seeing Children, and has provided no drug analysis to Division since February 2023. Mother completed the two clerical tasks from the agreement. She has not attempted to complete, or has made only minimal progress in, the more intensive and long-term goals. Her lack of desire or lack of ability to follow through on these long-term goals provides substantial evidence for the circuit court's finding that any additional services would not likely bring about lasting parental adjustment enabling reunification.

### E. Mother's Disinterest or Lack of Commitment to Children—§ 211.447.7(5)

Mother argues the circuit court's finding she showed minimal interest in Children and lacked commitment to them is not supported by substantial evidence. She contends she visited Children every other week for twenty of the twenty-one months the case was open. She also asserts her relinquishing of Children into Division's custody demonstrated her desire to keep Children safe during her mental health crisis. She asserts only an interested and committed mother would take that action.

As discussed, the record discloses Mother went entire months without seeing Children. When she saw Children, it was during inconsistently scheduled supervised meetings. Mother draws a competing inference from her relinquishment of Children. Where there are two reasonable inferences, this Court defers to the circuit court's assessment of the evidence. *In Int. of J.P.B.*, 509 S.W.3d at 90. This Court defers to the circuit court's assessment of Mother's relinquishment of Children and her total absence for months at a time as demonstrating disinterest or lack of commitment to Children.

### F. Mother's Deliberate Acts Subject the Juvenile to a Substantial Risk of Physical or Mental Harm—§ 211.447.7(7)

An inability to adequately address substance abuse and mental health issues subject children to a substantial risk of harm. *In re I.G.P.*, 375 S.W.3d 112, 132 (Mo. App. W.D. 2012).

16

Mother was discharged from one counselor because she did not attend her scheduled appointments. She has inconsistently attended counseling with Division. Mother claims she met with a psychiatrist but Division received no evidence to support this claim. Likewise, Mother has refused to enter in-patient treatment for her drug abuse, even though her treatment plan requires it. She tested positive for methamphetamines and amphetamines in five consecutive urinalyses from January 2, 2023 to February 25, 2023. She has not participated in a drug test since then. This inability to adequately address her substance abuse and mental health issues subject Children to a substantial risk of harm.

Substantial evidence supported the circuit court's best interests determination. It did not abuse its discretion in finding terminating Mother's parental rights was in Children's best interests. Point II is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Renée Hardin-Tammons, J. concur.

17